## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RAFAEL POLANCO and MONIQUE JOHNSON, individually and as representatives of a class of participants and beneficiaries on behalf of the WPP Group USA, Inc. Savings and Investment Plan, | Civil Action No. _____ |
| *Plaintiffs*, | COMPLAINT—CLASS ACTION |
| v. | |
| WPP GROUP USA, INC d/b/a WPP IT, and ADMINISTRATIVE AND INVESTMENT COMMITTEE OF THE SAVINGS AND INVESTMENT PLAN, | |
| *Defendants*. | |

1.      Plaintiffs, Rafael Polanco and Monique Johnson (together, "Plaintiffs"), individually and as representatives of a class of participants and beneficiaries of the WPP Group USA, Inc. Savings and Investment Plan (the "Plan") bring this Employee Retirement Income Security Act of 1974 ("ERISA")[1] action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) and Rule 23 of the Federal Rules of Civil Procedure against Defendants, WPP Group USA, Inc. ("WPP"), and the Administrative and Investment Committee of the Savings and Investment Plan (the "Committee") (together "Defendants"), for (1) breach of ERISA's fiduciary duties; and (2) engaging in self-dealing and transactions prohibited by ERISA.

2.      ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the

---

[1] 29 U.S.C. §§1001–1461.

documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982).

3.      Instead of loyally and prudently acting in the best interest of Plan participants, Defendants chose to use Plan assets exclusively to benefit WPP, to the detriment of the Plan and its participants, by using millions of dollars of Plan assets to offset WPP's obligations to make contributions to the Plan.

4.      To remedy these fiduciary breaches and ERISA violations, Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Plan, bring this action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and to restore to the Plans any profits made through Defendants' use of the Plan's assets. In addition, Plaintiffs seek such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

5.      This Court has exclusive subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

6.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

7.      Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.

## PARTIES

8.      The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34) that covers eligible employees of WPP and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1103(a).

9.      Plaintiff Rafael Polanco is a resident of the State of New York, was previously employed by WPP until 2023, and was a participant in the Plan during the class period under ERISA § 3(7), 29 U.S.C. § 1002(7).

10.     Plaintiff Monique Johnson is a resident of the State of Texas, was previously employed by WPP until 2023, and was a participant in the Plan during the class period under ERISA § 3(7), 29 U.S.C. § 1002(7).

11.     During the class period, Plaintiffs' individual accounts were charged, and Plaintiffs paid, for a share of the Plan's administrative expenses.

12.     Plaintiffs have Article III standing to bring this action on behalf of the Plan because they suffered actual injuries through the misallocation of Plan forfeitures by Defendants with regard to the Plan as it relates to their individual 401(k) accounts. This injury is fairly traceable to Defendants' unlawful conduct in using Plan forfeitures for their own benefit and this harm is likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiffs and to the class.

13.     Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

14.     The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

15.     Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of how Plan forfeitures should be allocated by the Defendants and also lacked actual knowledge of how Plan forfeitures were used by the Defendants.

16.     WPP is a Delaware-incorporated company with its principal place of business at 175 Greenwich Street, New York, NY 10007.

17.     WPP is the Plan sponsor under 29 U.S.C. § 1002(16)(B) and the Committee is the Plan administrator under 29 U.S.C. § 1002(16)(A) with broad authority over the administration and management of the Plan.

18.     The Committee was created by WPP to assist in the management of the Plan and was delegated with authority to, among other things, direct the trustee with respect to crediting and distribution of the Plan assets.

19.     WPP and the Committee are both named fiduciaries of the Plan and each exercised discretionary authority and discretionary control over the management and administration of the Plan with respect to the matters alleged herein and were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A). Hereafter, a person or group of people who exercise authority or control of Plan assets will be referred to as a "Plan Fiduciary" or "Plan Fiduciaries."

## FACTS APPLICABLE TO ALL COUNTS

20.     In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

21.     As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

22.     Throughout the class period, the Plan incurred plan expenses through paying service providers both direct and indirect compensation to provide services to the Plan.

23.     Throughout the class period the Plan paid direct and/or indirect compensation to, at a minimum, Portfolio Evaluations, Inc., Bencivenga Ward & Co. CPAs PC, The Vanguard Group, Inc. ("Vanguard"), Davis & Gilbert LLP, Mercer, and CapFinancial Partners LLC for services ranging from, among others, recordkeeping and administration, accounting, consulting, trustee services, loan processing, participant communications, investment management services, and legal services. Hereafter the payment for services from Plan assets shall collectively be referred to as "Plan Expenses."[2]

24.     The use of Plan assets to pay Plan Expenses reduces the funds available to Plan participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

25.     Throughout the class period, the Plan has been funded by a combination of wage withholdings by participants and WPP matching contributions, each of which is deposited into the Plan's trust fund and allocated to individual participant accounts.

---

[2] The amount of Plan Expenses specifically identified in this Complaint likely understate the actual Plan Expenses paid by Plan participants because the amounts do not include undisclosed indirect compensation paid by Plan participants.

26.     Upon their deposit into the Plan's trust fund, all participant contributions and WPP contributions become assets of the Plan.

27.     Under the terms of the Plan, participants are immediately vested in their own contributions, as well as any actual earnings thereon and are 100% vested in WPP matching contributions and any actual earnings on such amounts after three years of service.

28.     To the extent a participant is not 100% vested in the assets in his or her account upon termination of employment, that participant forfeits WPP contributions on the earlier of the Plan year that participant takes a distribution of his or her entire vested account or the date that participant incurs a consecutive 60-month break in service.

29.     If a terminated participant is reemployed before a five-year break in service, WPP must restore forfeited Plan assets if the participant repays the full amount of the participant's distribution.

30.     According to the Plan, the Plan Fiduciaries had discretion to, at a minimum, use forfeited Plan assets to pay Plan Expenses or reduce future contributions.

31.     When making the decision regarding the use of Plan forfeitures, the Plan Fiduciaries have been and are required by 29 U.S. Code § 1104 to discharge their duties with respect to a plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan.

32.     Under ERISA, Plan Fiduciaries are also required to discharge their duties "in accordance with the documents and instruments governing the plan . . . ." 29 U.S. Code § 1104 (a)(1)(D).

33.     Additionally, as explicitly provided in 29 U.S.C. § 1002(34), the Plan Fiduciaries also had the discretion to allocate "forfeitures of accounts of other participants" to participants.

34.     Instead, the Plan Fiduciaries have consistently chosen to utilize the forfeited Plan assets to benefit WPP at the expense of the Plan's participants.

35.     During 2018, Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $3,446,686 in forfeitures to offset WPP contributions instead of allocating forfeitures to pay Plan expenses (e.g., recordkeeping fees, investment management fees, and transaction fees – hereafter "Plan Expenses") or allocating the forfeitures back to eligible participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

36.     During 2018, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,486,039 for the year ended December 31, 2018.

37.     On December 31, 2018, unallocated forfeitures were $7,630,064.

38.     During 2018, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $7,630,064 that remained unallocated at the end of the year to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,486,039 for the year ended December 31, 2018.

39.     During 2018, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $7,630,064 in a timely fashion to avoid having unallocated forfeitures of $7,630,064 on December 31, 2018.

40.     During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $7,630,064 carried over from 2018 in a

timely fashion to pay Plan Expenses or to allocate the forfeitures back to eligible Plan

Participants in accordance with a definite formula defined in the Plan.

41.     During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan

assets when deciding to use $6,873,665 in forfeitures to offset WPP contributions instead of

allocating forfeitures to pay Plan Expenses or allocating the forfeitures back to eligible Plan

Participants in the plan year in which they were incurred in accordance with a definite formula

defined in the Plan.

42.     During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan

assets by failing to use forfeitures to pay Plan Expenses deducted from net assets available for

benefits in the amount of $1,170,193 for the year ended December 31, 2019.

43.     On December 31, 2019, unallocated forfeitures were $3,546,797.

44.     During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan

assets by failing to use unallocated forfeitures of $3,546,797 that remained unallocated at the end

of the year to pay Plan Expenses deducted from net assets available for benefits in the amount of

$1,170,193 for the year ended December 31, 2019.

45.     During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan

assets by failing to use unallocated forfeitures of $3,546,797 in a timely fashion to avoid having

unallocated forfeitures of $3,546,797 on December 31, 2019.

46.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan

assets by failing to use the unallocated forfeitures of $3,546,797 carried over from 2019 in a

timely fashion to pay Plan Expenses or to allocate the forfeitures back to eligible Plan

participants in accordance with a definite formula defined in the Plan.

47.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $3,563,369 in forfeitures to offset WPP contributions instead of allocating forfeitures to pay Plan Expenses or allocating the forfeitures back to eligible Plan participants in the Plan year in which they were incurred in accordance with a definite formula defined in the Plan.

48.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,535,130 for the year ended December 31, 2020.

49.     On December 31, 2020, unallocated forfeitures were $11,270,852.

50.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $11,270,852 that remained unallocated at the end of the year to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,535,130 for the year ended December 31, 2020.

51.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $11,270,852 in a timely fashion to avoid having unallocated forfeitures of $11,270,852 on December 31, 2020.

52.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $11,270,852 carried over from 2020 in a timely fashion to pay Plan Expenses or to allocate the forfeitures back to eligible Plan participants in accordance with a definite formula defined in the Plan.

53.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $8,538,811 in forfeitures to offset WPP contributions instead of allocating forfeitures to pay Plan Expenses or allocating the forfeitures back to eligible Plan

participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

54.    During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,340,138 for the year ended December 31, 2021.

55.    On December 31, 2021, unallocated forfeitures were $8,402,934.

56.    During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $8,402,934 that remained unallocated at the end of the year to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,340,138 for the year ended December 31, 2021.

57.    During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $8,402,934 in a timely fashion to avoid having unallocated forfeitures of $8,402,934 on December 31, 2021.

58.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures of $8,402,934 carried over from 2021 in a timely fashion to pay Plan Expenses or to allocate the forfeitures back to eligible Plan participants in accordance with a definite formula defined in the Plan.

59.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $6,347,387 in forfeitures to offset WPP contributions instead of allocating forfeitures to pay Plan Expenses or allocating the forfeitures back to eligible Plan participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

60.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use forfeitures to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,594,383 for the year ended December 31, 2022.

61.    On December 31, 2022, unallocated forfeitures were $7,929,380.

62.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $7,929,380 that remained unallocated at the end of the year to pay Plan Expenses deducted from net assets available for benefits in the amount of $1,594,383 for the year ended December 31, 2022.

63.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated forfeitures of $7,929,380 in a timely fashion to avoid having unallocated forfeitures of $7,929,380 on December 31, 2022.

64.    Specific allegations related to calendar year 2023 will be provided once the Plan Fiduciaries correct their failure to file the accountant's opinion and audited financial statements that are required to be filed along with the Plan's Form 5500 but, upon information and belief, Plaintiffs believe the amount of unallocated Plan forfeitures for calendar year 2022 (provided above) was substantially similar in calendar year 2023 and that in 2023 the Plan Fiduciaries again exercised discretion over, and control of, Plan assets by failing to use the unallocated Plan forfeitures to pay Plan Expenses or to allocate the forfeitures back to eligible participants in accordance with a definite formula defined in the Plan.

65.    The Plan's 2024 Form 5500 is not yet available, but, upon information and belief, Plaintiffs believe the amount of unallocated forfeitures for calendar year 2022 (provided above) was substantially similar in calendar year 2024 and that in 2024 the Plan Fiduciaries again exercised discretion over, and control of, Plan assets by failing to use the unallocated forfeitures

to pay Plan Expenses or to allocate the forfeitures back to eligible participants in accordance with a definite formula defined in the Plan.

66.     Under the terms of the Plan and the provisions of ERISA, throughout the class period the Defendants (Plan Fiduciaries) exercised discretion over, and control of, Plan assets when directing the use of forfeited Plan assets.

67.     Under the terms of the Plan and the provisions of ERISA, throughout the class period the Plan Fiduciaries were required to determine, with respect to forfeited Plan assets, which of several alternatives would be in the best interest of the participants.

68.     As described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use forfeitures to reduce employer contributions was, all else being equal, in the best interest of WPP because that option decreased WPP's own contribution costs.

69.     As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when directing the use of Plan assets to pay administrative fees to Vanguard from the accounts of participants.

70.     As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when failing to use forfeitures to cover indirect compensation paid to Vanguard for administrative services.

71.     There are no facts or circumstances throughout the class period that make discretionary decisions to use forfeitures to reduce WPP contributions consistent with discharging their duties with respect to the Plan ***solely*** in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan.

72.     As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets and consistently and reflexively chose to use the forfeitures for their own exclusive interest, to the detriment of the Plan and participants, by allocating forfeitures toward reducing WPP's contributions to the Plan while enabling WPP to maintain its discretionary contributions as an employee benefit.

73.     While Defendants benefited, the Plan and its participants and beneficiaries suffered.  If Defendants decided throughout the class period to use forfeitures to defray the reasonable expenses of administering the Plan or allocated the forfeitures back to eligible participants, the value of the Plan and the value of the participant's individual accounts would have been greater thereby providing greater retirement benefits to Plan participants and beneficiaries.

## CLASS ACTION ALLEGATIONS

74.      29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

75.     In acting in their representative capacity for the Plan, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the WPP Group USA, Inc. Savings and Investment Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning December 13, 2018, and running through the date of judgment.

76.     The class includes over 20,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

77.    There are questions of law and fact common to this class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Thus, common questions of law and fact include but are not limited to the following:

  a.  Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

  b.  Whether Defendants breached their fiduciary duties to the Plan with respect to their management and allocation of Plan assets;

  c.  Whether Plan Fiduciaries engaged in prohibited transactions with Plan assets;

  d.  What are the losses to the Plan resulting from each alleged breach of ERISA; and

  e.  What Plan-wide equitable and other relief the Court should impose to remedy Defendants' alleged breaches.

78.    Plaintiffs' claims are typical of the claims of the class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

79.    Plaintiffs will adequately represent the class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the class period, have no interest that conflicts with the class, are committed to the vigorous representation of the class, and have engaged experienced and competent lawyers to represent the class.

80.    Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and

adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

81.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

82.     Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

## COUNT I

### Breach of ERISA's Fiduciary Duty of Loyalty

### (29 U.S.C 1104(a)(1)(A))

83.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

84.     When exercising discretion and control over Plan forfeitures and using them to reduce WPP contributions, the Plan Fiduciaries considered the best interest of WPP as opposed to participants, in violation of ERISA.

85.     Alternatively, when exercising discretion and control over Plan forfeitures and failing to use them to defray the reasonable costs of administering the Plan, the Plan Fiduciaries considered the best interests of WPP, as opposed to participants, in violation of ERISA.

86.     As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which they are personally liable and are subject to

appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

87.    Each Defendant knowingly participated in the breach of the other Defendants, knew that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

88.    Plaintiffs have suffered losses as a direct result of Defendants' breach of their duty of loyalty.

## COUNT II

### Breach of ERISA's Fiduciary Duty of Prudence

### (29 U.S.C. 1104(a)(1)(B))

89.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

90.    When exercising discretion and control over Plan forfeitures and using them to reduce WPP contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to Plan participants and their

beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA.

91.    In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited Plan assets in the Plan to reduce WPP's own contribution expenses, as opposed to the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

92.    By refusing to use forfeited Plan assets to eliminate the administrative expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce WPP's own contribution expenses, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan assets, and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited Plan assets to pay Plan Expenses.

93.    Had Defendants conformed with the minimum standard of care required under ERISA, they would not have used forfeitures to reduce WPP contributions.

94.    Alternatively, had Defendants conformed with the minimum standard of care required under ERISA, they would have used forfeitures to defray reasonable expenses of administering the Plan.

95.    Plaintiffs have suffered losses as a direct result of the Defendants' breach of their duty of prudence.

## COUNT III

### Fiduciary Prohibited Transactions/ Self-Dealing

### (29 U.S.C. 1106(b)(1))

96.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

97.    29 U.S.C. § 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

98.    Defendants violated this prohibition in their management and control of forfeited Plan assets in the Plan. By allocating these Plan assets toward offsetting WPP's matching contributions, thereby saving WPP millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

99.    As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and lost earnings on those assets.

100.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## COUNT IV

### Fiduciary Prohibited Transactions/ Self-Dealing

### (29 U.S.C. 1106(a)(1))

101.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

102.   29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect. . . exchange. . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

103.   Defendants are parties in interest, as that term is defined under 29 U.S.C. § 1002 (14), because they are Plan Fiduciaries and because WPP is the employer of Plan participants.

104.   When Defendants elected to use forfeited Plan assets as a substitute for future employer contributions to the Plan, thereby saving WPP millions of dollars in contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or use of Plan assets by or for the benefit of a party in interest.

105.   As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and lost investment returns on those assets.

106.   Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## COUNT V

### Failure to Adequately Monitor Other Fiduciaries

107.    Plaintiffs restate the above allegations as if fully set forth herein.

108.    Defendant WPP had the authority to appoint and remove members or individuals responsible for Plan forfeitures on the Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

109.    In light of this authority, Defendant WPP had a duty to monitor those individuals responsible for Plan forfeitures on the Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

110.    Defendant WPP had a duty to ensure that the individuals responsible for Plan forfeitures possessed the needed qualifications and experience to carry out their duties (or used qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's forfeitures; and reported regularly to WPP.

111.    The objectively disloyal, imprudent, and conflicted manner in which the Committee of the Plan handled Plan forfeitures inferentially establish that Defendant WPP breached its duty to monitor by, among other things:

   a.    Failing to monitor and evaluate the performance of individuals responsible for Plan forfeitures on the Committee of the Plan or have a system in place for doing so, standing idly by as the Plan misallocated Plan forfeiture for WPP's benefit;

   b.    Failing to monitor the process by which the Committee of the Plan was evaluated and failing to investigate the proper use of Plan forfeitures; and

   c.    Failing to remove individuals responsible for Plan forfeitures on the Committee of the Plan whose performance was inadequate in

that these individuals continued to misallocate Plan forfeitures for the benefit of WPP.

112.    As the consequences of the breaches of the duty to monitor for Plan forfeitures, the Plaintiffs and participants suffered millions of dollars of objectively unreasonable and unnecessary monetary losses.

113.    Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendant WPP is liable to restore to the Plan all losses caused by its failure to adequately monitor individuals responsible for Plan forfeitures on the Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the Plan and all similarly situated participants and beneficiaries, respectfully requests that the Court:

- find and declare that Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

- order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

- determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

- order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

- remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

- surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;
- certify the class, appoint Plaintiffs as class representatives, and appoint the Chirinos Law Firm PLLC as class counsel;
- award to Plaintiffs and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;
- order the payment of interest to the extent it is allowed by law; and
- grant other equitable or remedial relief as the Court deems appropriate.

December 13, 2024                           Respectfully submitted,


/s/ Jenny Lewis
**CHIRINOS LAW FIRM PLLC**
Jenny M. Lewis, Bar No. 5869730
Tulio D. Chirinos (*Pro Hac Vice* forthcoming)
370 Camino Gardens Blvd., Ste 106
Boca Raton, FL 33432
Telephone: (561) 299-6334
jlewis@chirinoslawfirm.com
tchirinos@chirinoslawfirm.com


*Attorneys for Plaintiffs and Proposed Class*