UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

RAFAEL POLANCO, ET AL.,                  24-cv-9548 (JGK)

                        Plaintiffs,      **MEMORANDUM OPINION**
                                         **AND ORDER**

        - against -

WPP GROUP USA, INC., ET AL.,

                        Defendants.
————————————————————————

**JOHN G. KOELTL, District Judge:**

The plaintiffs, Rafael Polanco and Monique Johnson, are former participants in a retirement plan sponsored by WPP Group USA, Inc. and administered by the Administrative and Investment Committee of the Savings and Investment Plan (the "Plan Committee"). The plaintiffs allege that WPP and the Plan Committee breached their fiduciary duties and engaged in prohibited self-dealing in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq., by using funds forfeited by plan participants to reduce future employer contributions rather than to pay the plan's administrative costs. The defendants now move to dismiss the plaintiffs' complaint in its entirety.

**I.**

**A.**

Congress enacted ERISA "to protect ... the interests of participants in employee benefit plans and their beneficiaries" by, among other things, "establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans." 29 U.S.C. § 1001(b).[1] "To that end, every ERISA plan must have at least one named fiduciary with authority to control and manage the operation and administration of the plan." Cunningham v. Cornell Univ., 604 U.S. 693, 696 (2025).

ERISA subjects plan fiduciaries to "strict standards of ... conduct" — "most prominently, a standard of loyalty and a standard of care." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985). The former requires a plan fiduciary to act "solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The latter requires a plan fiduciary to "discharge his duties with respect to a plan ... with the care, skill, prudence, and diligence under the circumstances

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Id. § 1104(a)(1)(B).

Finally, "[s]ection 1106 supplements the fiduciary's general duty of loyalty to the plan's beneficiaries by categorically barring certain transactions deemed likely to injure the pension plan." Cunningham, 604 U.S. at 697. Section 1106(a) governs "[t]ransactions between plan[s] and part[ies] in interest," and states that "[e]xcept as provided in section 1108," a fiduciary "shall not cause the plan to engage" in certain transactions with a "party in interest." 29 U.S.C. § 1106(a)(1). Section 1106(b) governs "[t]ransactions between plan[s] and fiduciar[ies]" and states, among other things, that "[a] fiduciary with respect to a plan shall not[] deal with the assets of the plan in his own interest or for his own account." Id. § 1106(b).

**B.**

WPP sponsors a defined contribution plan (the "Plan") to assist the company's employees in saving for retirement. Compl. ¶¶ 8-10, 17-19, ECF No. 8. "A defined contribution plan is one where employees and employers may contribute to the plan," "the employer's contribution is fixed," and "the employee receives whatever level of benefits the amount contributed on his behalf

will provide." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439 (1999). Unlike a defined benefit plan, a defined contribution plan "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." 29 U.S.C. § 1002(34).[2]

The Plan helps employees save for retirement in two ways. First, it allows employees to withhold a portion of their wages, which are ultimately deposited into their individual retirement accounts. Compl. ¶ 25. Second, WPP may — but need not — provide a matching employer contribution. According to the Plan document, "for each Plan Year," WPP, "in its discretion, may contribute to the Plan discretionary Matching Contributions to the Account of each Participant." Decl. of William J. Delany Supp. Mot. to Dismiss ("Delany Decl."), ECF No. 31, Ex. 1 § 4.2(a).[3] Both funding streams flow first into the Plan's trust

---

[2] A defined benefit plan, by contrast, provides a fixed benefit to employees. 29 U.S.C. § 1002(35). The key difference between a defined benefit plan and a defined contribution plan is that for the former, "the employer typically bears the entire investment risk and ... must cover any underfunding as the result of a shortfall that may occur from the plan's investments." Jacobson, 525 U.S. at 439.

[3] The Plan document is incorporated by reference into the plaintiffs' complaint because "the complaint relies heavily upon its terms and effect." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016); see, e.g., Compl. ¶¶ 25-31 (discussing funding methods authorized by the Plan document).

fund and then are allocated to individual participant accounts. Compl. ¶ 25.

Employee contributions — the money participants contribute toward their individual accounts from their wages — vest immediately. Id. ¶ 27. By contrast, WPP's contributions are subject to a three-year vesting schedule. Id. A participant who remains continuously employed with WPP for three years becomes fully vested in WPP's contributions. Id. But if the participant experiences any break in service before WPP's contributions vest, the participant forfeits the balance of the unvested employer contributions on the earlier of (1) the Plan year in which the participant takes a distribution of his or her entire vested account or (2) the date on which the participant incurs a sixty-month consecutive break in service. Id. ¶ 28.

Once a participant has forfeited his or her employer contributions, the defendants are authorized by the Plan to use those funds either to cover employer contributions or to pay the Plan's administrative costs. Id. ¶ 30. Since at least 2018, the defendants have used forfeited assets ("Forfeitures") primarily to cover employer contributions. Id. ¶¶ 35-65. Consequently, participants' individual accounts have largely covered the Plan's administrative costs. Id. ¶ 11. When Forfeitures exceeded

the amount of employer contributions, they almost invariably remained in the Plan.[4]

The plaintiffs seek to represent a class of current and former WPP employees who participated in the Plan from 2018 to the present. Id. ¶ 75. In 2024, the plaintiffs sued WPP and the Plan Committee, alleging that their decision to use Forfeitures to cover employer contributions before first covering administrative costs violated the defendants' obligations under ERISA. Specifically, the plaintiffs allege that the defendants (1) breached their fiduciary duty of loyalty in violation of § 1104(a)(1)(A) (Count I); (2) breached their fiduciary duty of prudence in violation of § 1104(a)(1)(B) (Count II); (3) authorized prohibited transactions between the Plan and a fiduciary in violation of § 1106(b)(1) (Count III); and (4) authorized prohibited transactions between the Plan and parties in interest in violation of § 1106(a)(1) (Count IV). The plaintiffs also allege that WPP (5) failed to monitor the Plan Committee to ensure it was fulfilling its fiduciary duties (Count V). The defendants move to dismiss the plaintiffs' complaint in its entirety. ECF No. 29.

---

[4] The defendants used Forfeitures to reduce administrative expenses in 2023 — the first time during the putative class period. Pls.' Br. Opp'n Mot. to Dismiss 6, ECF No. 34.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiffs, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

For purposes of a Rule 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "[A] document not expressly incorporated by reference in the complaint" that "is nevertheless integral to the complaint" is "a fair object of consideration on a motion to dismiss." Goel, 820 F.3d at 559. "A document is integral to the

complaint where the complaint relies heavily upon its terms and effect." Id. "In most instances" in which the incorporation-by-reference "exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." Id. Courts thus routinely consider employee benefit plan documents to be incorporated by reference into complaints implicating ERISA. See, e.g., Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins., No. 22-cv-10312, 2023 WL 2478642, at *2 (S.D.N.Y. Mar. 13, 2023) ("Clearly, the complaint relies heavily upon the Plan's terms and effect, which renders the document integral to the complaint"), aff'd, 2024 WL 2813721 (2d Cir. 2024); see also Hutchins v. HP Inc. (Hutchins II), 767 F. Supp. 3d 912, 920 (N.D. Cal. 2025) (considering "the HP Inc. 401(k) Plan" to be "incorporated by reference into" the plaintiff's complaint because "it forms the basis of [the] [p]laintiff's claims and no party contests its authenticity").

### III.

### A.

The plaintiffs first allege that the defendants breached their fiduciary duties of loyalty and prudence under ERISA. To state a claim for breach of fiduciary duty under ERISA, the plaintiffs must allege that "(1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his

fiduciary duty." <u>Singh v. Deloitte LLP</u>, 650 F. Supp. 3d 259, 265-66 (S.D.N.Y. 2023), <u>aff'd</u>, 123 F.4th 88 (2d Cir. 2024). The defendants do not dispute that they were fiduciaries acting in their fiduciary capacities when they chose how to use Forfeitures. They claim only that the plaintiffs have not adequately alleged that the defendants breached their fiduciary duties of loyalty and prudence. <u>See</u> Defs.' Br. Supp. Mot. to Dismiss 11-15, ECF No. 30. The Court first addresses the plaintiffs' loyalty claim, followed by their prudence claim.

1.

ERISA requires a plan's fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "These provisions set out the basic ERISA fiduciary duty of loyalty." <u>Hutchins II</u>, 767 F. Supp. 3d at 923. According to the plaintiffs, the defendants "utterly failed to live up to this standard" because they "plac[ed] WPP's interests above Plan participants in using forfeitures for WPP's benefit" — that is, by using Forfeitures to cover future employer contributions — "when they had the discretion to use [them] for the benefit of Plan participants." Pls.' Br. Opp'n Mot. to Dismiss 9. "[I]f the Committee would have used

9

the forfeitures 'to defray the reasonable expenses of adminis-
tering the Plan or allocated the forfeitures back to eligible
participants, the value of the Plan and the value of the partic-
ipant[s'] individual accounts would have been greater.'" <u>Id.</u>
at 17 (quoting Compl. ¶ 73).

   This argument fails to state a claim for three reasons.
First, it interprets the duty of loyalty to create a benefit
that the Plan document itself does not guarantee — the use of
Forfeitures to pay administrative expenses. Yet "[u]nder ERISA
the fiduciaries' duties are found largely in the terms of the
plan itself." <u>Foltz v. U.S. News & World Rep., Inc.</u>, 865 F.2d
364, 373 (D.C. Cir. 1989); <u>see also</u> <u>US Airways, Inc. v.</u>
<u>McCutchen</u>, 569 U.S. 88, 100-01 (2013) (ERISA's purpose is to
"protect contractually defined benefits" and the statutory
scheme "is built around reliance on the face of written plan
documents"). ERISA does not "mandate what kind of benefits em-
ployers must provide if they choose" to establish an employee
retirement plan. <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 887
(1996). Nor does it "create an exclusive duty to maximize pecu-
niary benefits." <u>Faber v. Metro. Life Ins.</u>, No. 08-cv-10588,
2009 WL 3415369, at *7 (S.D.N.Y. Oct. 23, 2009), <u>aff'd</u>, 648 F.3d
98 (2d Cir. 2011). Rather, it "does no more than protect the
benefits which are due to an employee under a plan." <u>Bennett v.</u>
<u>Conrail Matched Sav. Plan Admin. Comm.</u>, 168 F.3d 671, 677 (3d

Cir. 1999) (evaluating fiduciary's obligations under § 1104(a)(1)(A) in context of defined contribution plan).

Because the touchstone of ERISA is the plan document, "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their <u>promised</u> benefits." <u>Sievert v. Knight-Swift Transp. Holdings, Inc.</u>, 780 F. Supp. 3d 870, 877 (D. Ariz. 2025); <u>see also</u> <u>Faber</u>, 2009 WL 3415369, at *7 ("[W]here a fiduciary complies with a plan's lawful terms and provides the beneficiaries the benefits they were due under the plan, there is no violation of § 1104(a)'s 'exclusive purpose' requirement."). The plaintiffs, however, make no allegation that they did not receive their promised benefits. Nor do they claim that the Plan document required the defendants to use Forfeitures to pay administrative expenses — to the contrary, the plaintiffs acknowledge that the Plan gives the defendants discretion in how to use Forfeitures. Compl. ¶ 72 (alleging that the defendants' use of Forfeitures "enabl[ed] WPP to maintain its discretionary contributions as an employee benefit").

As nearly every court to address this question has concluded, when (1) a plan document gives a plan fiduciary discretion in how to use forfeitures and (2) participants otherwise receive everything guaranteed by the plan's terms, plan fiduciaries do not violate their duty of loyalty merely by declining to use forfeitures to cover administrative expenses.

See, e.g., Hutchins II, 767 F. Supp. 3d at 924-26; Sievert, 780 F. Supp. 3d at 877-79; Barragan v. Honeywell Int'l Inc., No. 24-cv-4529, 2025 WL 2383652, at *4-5 (D.N.J. Aug. 18, 2025); Estay v. Ochsner Clinic Found., No. 25-cv-507, 2025 WL 2644782, at *2-5 (E.D. La. Sep. 15, 2025); Armenta v. WillScot Mobile Mini Holdings Corp., No. 25-cv-407, 2025 WL 2645518, at *4-5 (D. Ariz. Sep. 15, 2025); Dimou v. Thermo Fisher Sci. Inc. (Dimou I), No. 23-cv-1732, 2024 WL 4508450, at *9 (S.D. Cal. Sep. 19, 2024).

Second, and relatedly, the plaintiffs' argument assumes that Plan participants would have received greater benefits if the defendants had used Forfeitures to cover administrative expenses instead of future employer contributions. But that assumption is faulty because the Plan document does not require that WPP make employer contributions at all. Section 4.2(a) of the Plan document expressly states that "for each Plan Year, each Employer, in its discretion, may contribute to the Plan discretionary Matching Contributions to the Account of each Participant who is an Eligible Employee." Delany Decl. Ex. 1 § 4.2(a) (emphasis added). If WPP had used Forfeitures to cover administrative expenses, it would have been well within its rights simply not to provide employer contributions during the putative class period.

Because WPP was not required to pay employer contributions,
every forfeited dollar allocated toward future employer contri-
butions was a dollar Plan participants would not otherwise have
in their accounts. The plaintiffs' claim, therefore, is not that
the defendants used Forfeitures in a way that did not benefit
Plan participants — they received benefits in the form of elec-
tive employer contributions. Instead, the plaintiffs essentially
claim that they would have preferred to have Forfeitures used to
pay administrative expenses <u>as well as</u> employer contributions.
The plaintiffs are correct that the defendants could have chosen
to use Forfeitures to cover administrative fees and then sepa-
rately provide employer contributions. But the Plan document
does not guarantee participants that benefit.

Third, the plaintiffs' theory of the defendants' fiduciary
duties under ERISA is difficult to harmonize with established
practice. Since 1963, the United States Department of Treasury
has promulgated regulations expressly requiring employers to use
forfeitures to cover employer contributions in defined <u>benefit</u>
plans:

> In the case of a trust forming a part of a qualified
> pension plan, the plan must expressly provide that for-
> feitures arising from severance of employment, death, or
> for any other reason, must not be applied to increase
> the benefits any employee would otherwise receive under
> the plan at any time prior to the termination of the
> plan or the complete discontinuance of employer contri-
> butions thereunder. The <u>amounts so forfeited must be</u>

<u>used as soon as possible to reduce the employer's con-</u>
<u>tributions</u> under the plan.

26 C.F.R. § 1.401-7(a) (emphasis added).[5]

In 1986, Congress passed the Tax Reform Act, Pub. L.
No. 99-514, 100 Stat. 2085, which, among other things, modified
the rules regarding benefit forfeitures for retirement plans.
The conference report accompanying the statute explained that
the Tax Reform Act provided uniform rules governing the use of
forfeitures under defined contribution plans. H.R. Rep. No. 99-
841, at II-442 (1986). Specifically, the conference report noted
that "forfeitures arising in any defined <u>contribution</u>
plan ... c[ould] be either (1) reallocated to the accounts of
other participants in a nondiscriminatory fashion, or (2) used
to reduce future employer contributions or administrative
costs." <u>Id.</u> (emphasis added).

The Treasury Department, invoking the Tax Reform Act, re-
cently proposed an update to § 1.401-7(a) to "clarify that

---

[5]  The Treasury Department promulgated 26 C.F.R. § 1.401-7(a) under
the Internal Revenue Code. But courts routinely read that statute
in harmony with ERISA when they overlap. <u>See, e.g.</u>, <u>Hutchins v. HP</u>
<u>Inc.</u> (<u>Hutchins I</u>), 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024)
(rejecting the plaintiff's "theory of liability [as] contrary to
the settled understanding of Congress and the Treasury Department
regarding defined contribution plans"); <u>Renda v. Adam Meldrum &</u>
<u>Anderson Co.</u>, 806 F. Supp. 1071, 1083 (W.D.N.Y. 1992) ("[T]his
Court cannot ignore the authority of guidelines and regulations
developed by the Treasury Department in interpreting provisions of
ERISA.").

forfeitures arising in any defined <u>contribution</u> plan ... may be used for one or more of the following purposes, as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase bene-fits in other participants' accounts in accordance with plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282, 12283 (proposed Feb. 27, 2023) (to be codified at 26 C.F.R. pt. 1) (emphasis added). In the Treasury Depart-ment's view, the proposed clarifications are "[c]onsistent with changes made by" Congress in the Tax Reform Act. 88 Fed. Reg. at 12283.[6]

And as recently as this year, the Secretary of Labor has stated in an amicus curiae brief addressing precisely the ques-tion presented here that "us[ing] Plan forfeitures to fund matching contribution benefits — an option explicitly granted by the Plan document and the proposed Treasury regulation — does not state a plausible claim for breach [of the duty of loy-alty]." U.S. Sec'y of Lab.'s Br. as Amicus Curiae Supp. Def.-

---

[6] The Treasury Department's proposed rules are not binding. But "the proposed rule helps to illustrate the difficulty with" the plain-tiffs' theory — namely, that it "effectively asserts that the general fiduciary duty provision of ERISA abrogates ... long-set-tled rules regarding the use of forfeitures in defined contribution plans." <u>Hutchins II</u>, 767 F. Supp. 3d at 923; <u>Dimou v. Thermo Fisher Sci. Inc.</u> (<u>Dimou II</u>), No. 23-cv-1732, 2025 WL 2611240, at *6 (S.D. Cal. Sep. 9, 2025) (same).

Appellee 15, Hutchins v. HP Inc., No. 25-823 (9th Cir. July 9, 2025), ECF No. 24-1.

The plaintiffs never square their theory with these congressional and agency sources. Their only response is that "[t]he Tax Code and the Treasury regulations are concerned with a plan's design, not fiduciary decision making." Pls.' Br. Opp'n Mot. to Dismiss 15. But that answer is unpersuasive. In the plaintiffs' view, Congress and the Treasury Department have blessed plans that let fiduciaries choose how to use forfeitures, but ERISA nonetheless prohibits fiduciaries from exercising that choice. That argument does not harmonize the statutes — it puts them at cross purposes. See Hutchins II, 767 F. Supp. 3d at 923 (rejecting argument "that the general fiduciary duty provision of ERISA abrogates these long-settled rules regarding the use of forfeitures in defined contribution plans" because the plaintiffs pointed to no "intervening changes in the law or any particularized facts justifying departure from ... settled rules").

To state a claim for breach of the duty of loyalty, the plaintiffs must allege something more than that the defendants exercised a choice authorized by the Plan document — for example, that the defendants failed to do what they were required to do by the Plan document. But the plaintiffs did not do so. The Plan document by its express terms gives the defendants

discretion in choosing whether to use forfeited funds to cover employer contributions or administrative costs:

> Any forfeiture of Matching Contributions, Profit Sharing Contributions or other forfeitures arising under the Plan for a given Plan Year and earnings thereon must be held, separately invested, and used <u>to reduce subsequent Company Contributions, pay Plan expenses, or for any other purposes determined by the Administrators</u>.

Decl. of Tulio D. Chirinos Opp'n Mot. to Dismiss ("Chirinos Decl."), ECF No. 35, Ex. 1 § 6.2(d) (emphasis added); <u>see also</u> Compl. ¶ 30. By using Forfeitures to cover contributions, the defendants neither violated the Plan document's terms nor deprived the plaintiffs of any entitlement guaranteed to them by the Plan.[7]

The plaintiffs also argue in passing that the defendants may have breached their duty of loyalty because they have a conflict of interest in choosing how to use Forfeitures. <u>See, e.g.,</u> Pls.' Br. Opp'n Mot. to Dismiss 9–10 ("[T]he only plausible explanation is that the fiduciaries were acting disloyally due to the conflict of interest between the employer and the Plan and its participants and beneficiaries."). That argument also fails,

---

[7] The plaintiffs also emphasize that "[e]ven after applying forfeitures to reduce WPP's matching contributions, WPP left a balance remaining in the forfeiture account of millions of dollars at the end of each year." Pls.' Br. Opp'n Mot. to Dismiss 5. But using Forfeitures to pay administrative costs is a benefit that the Plan document does not guarantee to participants. A fiduciary does not breach the duty of loyalty by failing to provide participants benefits beyond what the Plan promises.

at least without additional factual allegations. A fiduciary does not violate the duty of loyalty merely by following the explicit terms of a plan document that permits the use of forfeitures to fund employer contributions. "[A] plaintiff seeking to establish a claim of disloyalty under ERISA must provide specific facts that move the needle on his claim from 'speculative' to 'plausible.'" Hutchins II, 767 F. Supp. 3d at 925. That is especially true for WPP, because although a common-law trustee usually "'wears only his fiduciary hat when he takes action to affect a beneficiary,' an ERISA fiduciary 'may wear different hats,' including by acting as both a plan fiduciary and as the plan sponsor." Id. at 924 (quoting Pegram v. Herdrich, 530 U.S. 211, 225 (2000)).[8]

Finally, the plaintiffs point to three cases that supposedly "have recently upheld nearly identical claims as those asserted" in this case. Pls.' Br. Opp'n Mot. to Dismiss 2. Those cases, however, are distinguishable, unpersuasive, or both.

---

[8] For example, when designing the Plan to allow the defendants to use Forfeitures to cover employer contributions, WPP was acting in its capacity as settlor, not fiduciary. Coulter v. Morgan Stanley & Co., 753 F.3d 361, 367 (2d Cir. 2014) ("Settlor functions ... include conduct such as establishing, funding, amending, or terminating a plan."); see also Buescher v. N. Am. Lighting, Inc., No. 24-cv-2076, 2025 WL 1927503, at *12 (C.D. Ill. June 30, 2025) ("To the extent that Plaintiff is putting forth a claim that, in fact, Defendants may never use forfeitures to offset their contributions, it would seem that he is challenging a settlor function, i.e., the design of a plan that allows employer offsets.").

The plaintiffs cite Rodriguez v. Intuit, Inc. for the proposition that a defendant breaches "its duty of loyalty by making decisions that were not in the best interest of Plan participants." 744 F. Supp. 3d 935, 944 (N.D. Cal. 2024). But Rodriguez is distinguishable because the plaintiffs there alleged exactly what the plaintiffs here have failed to allege — that the defendant made decisions that violated the plan document. Id. at 943-44.

The other two cases — Perez-Cruet v. Qualcomm Inc., No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024), and McManus v. Clorox Co., No. 23-cv-5325, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025) — are unpersuasive. Perez-Cruet held that the plaintiff had plausibly stated that the defendant breached its duty of loyalty by failing to use forfeited contributions to cover administrative costs because "the employer has the express duty under § 1104(a)(1)(A)(ii) of 'defraying reasonable expenses of administering the plan.'" 2024 WL 2702207, at *2. But as explained above, a fiduciary does not breach the duty of loyalty merely by exercising discretion expressly granted to it by the Plan document to deny participants a gratuity that the Plan document does not guarantee. As the district court in Hutchins I notes, "[t]he Perez-Cruet court's analysis of whether a decision to reduce employer contributions rather than pay administrative

costs is a violation of the duties of loyalty ... is conclu-
sory," and therefore unpersuasive. 737 F. Supp. 3d at 862 n.1.

McManus, by contrast, rested its decision on the defend-
ants' potential conflicts of interest. The plaintiffs in that
case alleged that the defendants, "after giving themselves dis-
cretion to do so as fiduciaries, used Plan assets to reduce
Clorox's non-elective contributions to the Plan instead of re-
ducing Plan participants' administrative costs." 2025 WL 732087,
at *3 (emphasis added). In the district court's view, that was
sufficient to allege that the defendants were motivated by self-
interest and thus violated their duty of loyalty. Id. at *3-4.
But alleging the mere potential of a conflict of interest is in-
sufficient to state a claim for breach of the duty of loyalty.
Fiduciaries under ERISA are permitted to "wear different hats,"
as long as they "wear only one at a time." Pegram, 530 U.S.
at 225. Moreover, "[t]o find that [a] [d]efendant's decision to
use forfeited assets to reduce its own contributions is moti-
vated by self-interest and violates its duties of
loyalty ... would contravene decades of federal regulations sug-
gesting that such a decision is entirely permissible." Sievert,
780 F. Supp. 3d at 878.

McManus is also distinguishable because the plan in that
case required the defendant to make non-elective contributions.
The plan participants thus would have been entitled to the

employer contributions even if the defendant had used forfei-
tures to cover the plan's administrative expenses. As explained
above, that is not so here — if the defendants had instead used
Forfeitures to cover the Plan's administrative expenses, WPP
would have been under no obligation to make employer contribu-
tions as well.

Because the plaintiffs' complaint shows only that the de-
fendants "complied with the Plan's lawful terms" and provided
Plan participants "with their benefits due," Wright v. Oregon
Metallurgical Corp., 360 F.3d 1090, 1100 (9th Cir. 2004), the
plaintiffs' claim that the defendants breached their duty of
loyalty (Count I) is **dismissed.**

**2.**

ERISA also requires that a plan fiduciary act "with the
care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in a like capacity and
familiar with such matters would use in the conduct of an enter-
prise of a like character and with like aims." 29 U.S.C.
§ 1104(a)(1)(B). "Because the content of the duty of prudence
turns on the circumstances prevailing at the time the fiduciary
acts, the appropriate inquiry will necessarily be context spe-
cific." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425
(2014). A "categorical rule is inconsistent with the context-

specific inquiry that ERISA requires." Hughes v. Northwestern Univ., 595 U.S. 170, 173 (2022).

The plaintiffs allege that "[i]n deciding how to allocate forfeitures, [the] [d]efendants utilized an imprudent and flawed process." Compl. ¶ 91. In the plaintiffs' view, there "are no facts or circumstances throughout the class period that make discretionary decisions to use forfeitures to reduce WPP contributions consistent with discharging their duties with respect to the Plan solely in the interest of participants and beneficiaries." Id. ¶ 71.

To the extent the plaintiffs mean to argue that the duty of prudence always requires a fiduciary to use forfeitures to pay administrative costs before using them to cover discretionary employer contributions, their theory "is in tension with the Supreme Court's analysis in Dudenhoeffer, which emphasizes that the plausibility of allegations of breach of fiduciary duty should consider the context and circumstances of the fiduciary's actions." Hutchins I, 737 F. Supp. 3d at 862. And, as explained above, this argument "would be contrary [to] the settled understanding of Congress and the Treasury Department regarding defined contribution plans like the one at issue in this case." Id. at 862-63. Numerous courts have reached the same conclusion. See, e.g., Sievert, 780 F. Supp. 3d at 879 ("[A] plan sponsor's decision to allocate forfeitures toward reducing its own

employer contributions, without more, is not sufficient to state a claim for a breach of fiduciary duty of ... prudence under ERISA."); Dimou II, 2025 WL 2611240, at *5-6 (same); Estay, 2025 WL 2644782, at *5 (same).

To the extent the plaintiffs mean instead to make the narrower claim that the defendants' particular decisionmaking process in this case was imprudent, their allegations are too conclusory to establish a plausible entitlement to relief. The "duty of prudence" can "trump[] the instructions of a plan document." Dudenhoeffer, 573 U.S. at 421. But "plausibly alleging a failure to fulfill the duty of prudence still requires more than simply speculating that an ERISA fiduciary might not have conducted the requisite inquiry." Hutchins II, 767 F. Supp. 3d at 927. "There must be specific facts alleged that invite the inference that the fiduciary actually engaged in imprudent conduct." Id.

The closest the plaintiffs come is their allegation that the defendants failed to allocate excess Forfeitures at the end of each Plan year during the putative class period. See Compl. ¶¶ 37-39, 43-45, 49-51, 55-57, 61-63. Some courts have held that those kinds of allegations may be sufficient to state a claim for breach of the duty of prudence. See Buescher, 2025 WL 1927503, at *15-16. But the plaintiffs never connect these allegations to their theory of imprudence. See Compl. ¶¶ 89-95. And

neither party addresses these allegations in their briefs when discussing the defendants' duty of prudence. The plaintiffs' claim that the defendants breached their duty of prudence (Count II) is therefore **dismissed.**

**B.**

The plaintiffs next claim that the defendants engaged in certain prohibited transactions in violation of 29 U.S.C. § 1106(a)(1) and (b)(1). Section 1106 regulates the conduct of plan fiduciaries by "placing certain transactions outside the scope of their lawful authority." Lockheed, 517 U.S. at 888. Section 1106(a)(1) provides that a fiduciary

> shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect —
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

Whereas § 1106(a)(1) targets certain transactions between a plan and an interested party, § 1106(b)(1) targets "[t]ransactions between plan and fiduciary" — specifically, when a fiduciary "deal[s] with the assets of the plan in his own interest or for his own account." To state a claim under § 1106(a) or (b), a plaintiff must allege a transaction within the meaning of those provisions. Wright, 360 F.3d at 1101 (rejecting prohibited-transaction claim because "[p]laintiffs fail[ed] to identify any transaction that falls within § 1106(a)(1) or (b)").

The plaintiffs allege that the Plan Committee violated § 1106(a)(1)(A) by "electing to use forfeited funds in the Plan as a substitute for its required contributions to the Plan." Pls.' Br. Opp'n Mot. to Dismiss 19 (citing Compl. ¶¶ 101–06). "As to § 1106(b)(1)," the plaintiffs "allege that the Committee used its power to deal with the Plan's assets for WPP's benefit or account by using forfeitures to reduce company contributions." Id. (citing Compl. ¶¶ 96–100).

The plaintiffs have failed adequately to state claims under either § 1106(a)(1) or (b)(1) because using forfeitures to cover employer contributions is not a transaction within the meaning of those provisions. In Lockheed, the Supreme Court held that "[s]ection [1106](a)(1)(D) does not in direct terms include the payment of benefits by a plan administrator," and that "the surrounding provisions suggest that the payment of benefits is in

25

fact not a 'transaction' in the sense that Congress used that
term in [§ 1106(a)]." 517 U.S. at 892-93. "What the 'transac-
tions' identified in [§ 1106(a)] ... have in common is that they
generally involve uses of plan assets that are potentially harm-
ful to the plan" — for example, "commercial bargains that
present a special risk of plan underfunding because they are
struck with plan insiders, presumably not at arm's length." Id.
at 893. "The payment of benefits conditioned on performance by
plan participants cannot reasonably be said to share that char-
acteristic." Id.

Employer contributions — which, as explained, the Plan doc-
ument does not require the defendants to make — are benefits.
Every dollar of Forfeiture allocated toward employer contribu-
tions is a benefit Plan participants are not otherwise entitled
to. Because the intra-plan reallocation of forfeitures to cover
employer contributions is a "payment of benefits," id., it is
not a transaction within the meaning of § 1106. See, e.g.,
Dimou I, 2024 WL 4508450, at *11 ("An intra-plan transaction,
like forfeiture reallocation, is unlike a sale or leasing of
property to a third-party."); Sievert, 780 F. Supp. 3d at 880
("[T]he reallocation of Plan assets to provide benefits to em-
ployees as matching contributions is not a prohibited
transaction."); Estay, 2025 WL 2644782, at *6 ("The Court finds

26

that the allocation of the Forfeitures is not a transaction as contemplated by § 1106.").

The plaintiffs respond with two arguments, neither of which is persuasive. First, they contend that they need not allege a transaction to state a claim under § 1106(b)(1) because that provision "makes no mention of a 'transaction.'" Pls.' Br. Opp'n Mot. to Dismiss 22. As an initial matter, the plaintiffs are mistaken — § 1106(b) is titled "[t]ransactions between plan and fiduciary." And in any event, it is difficult to understand why Lockheed would not apply with equal force to Section 1106(b)(1), given the Supreme Court "has interpreted § 1106 to prohibit fiduciaries from involving the plan and its assets in certain kinds of business deals." Wright, 360 F.3d at 1100 (emphasis added). Numerous courts agree. See, e.g., Faber, 2009 WL 3415369, at *8 ("Congress enacted § 1106 to bar categorically a transaction that is likely to injure the pension plan." (emphasis added) (quoting Lockheed, 517 U.S. at 888)); Hutchins I, 737 F. Supp. 3d at 868 (rejecting the argument "that § 1106(b)(1) does not require allegations of a transaction"); Dimou I, 2024 WL 4508450, at *11 ("Because Plaintiff's allegations do not implicate a prohibited transaction, she fails to state a plausible claim under §§ 1106(a)(1) and (b)(1).").

Second, the plaintiffs attempt to analogize this case to several Supreme Court decisions, but none is on point. For

27

example, the plaintiffs cite <u>Central States</u> for the proposition that "the Supreme Court has recognized that a fiduciary who fails to 'assur[e] full and prompt collection of contributions' — as [the] [d]efendants allegedly did here by impermissibly using forfeitures as a substitute for contributions — may 'be found to have violated' ERISA's prohibited transactions [provisions]." Pls.' Br. Opp'n Mot. to Dismiss 20 (quoting 472 U.S. at 573-74). But <u>Central States</u> is distinguishable several times over. To begin, the employers in <u>Central States</u> were required by a collective-bargaining agreement to make contributions to multiemployer benefit plans. 472 U.S. at 562. By contrast, the Plan document does not require the defendants in this case to make employer contributions at all. Delany Decl. Ex. 1 § 4.2. Moreover, the Supreme Court was not confronted with the question whether an employer's failure to pay contributions constituted a prohibited transaction under § 1106. Instead, the question was whether the multiemployer benefit plans' auditors were entitled to review the records of employees who were not covered by the collective-bargaining agreements. <u>Cent. States</u>, 472 U.S. at 563-64. And even then, the plaintiffs in this case do not allege that the defendants did anything like failing to "assur[e] full and prompt collection of contributions" — everyone agrees that the defendants in this case <u>did</u> pay employer contributions during the putative class period. Pls.' Br. Opp'n Mot. to

Dismiss 6 (chart showing that defendants used Forfeitures to cover employer contributions).

The plaintiffs also cite Commissioner v. Keystone Consolidated Industries, Inc., which they claim held that "a similar arrangement" was a "transaction." Id. at 20 (citing 508 U.S. 152, 159 (1993)). But the alleged transactions in that case were not benefit payments. The defendant in Keystone contributed real property, like truck terminals, to satisfy its obligations under the plan. 508 U.S. at 158-59. According to the Supreme Court, that was a "sale or exchange" under the Internal Revenue Code because it involved "the transfer of property in satisfaction of a debt." Id. at 159.

The plaintiffs next claim that the Supreme Court's recent decision in Cunningham v. Cornell University "forecloses [the] [d]efendants' arguments for dismissing prohibited transaction claims at this early stage." Pls.' Br. Opp'n Mot. to Dismiss 21 (citing 604 U.S. 693). But Cunningham does not stand for the proposition that a prohibited-transaction claim under ERISA always survives a Rule 12(b)(6) motion. The Court held that "plaintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less." Cunningham, 604 U.S. at 709. ERISA plaintiffs need not, as the respondent argued, additionally plead that none of the exceptions in § 1108 were met.

Id. But ERISA plaintiffs still must adequately allege a transaction within the meaning of the statute.

The problem with the plaintiffs' prohibited-transaction claims is not that they have failed to plead that none of the § 1108 exceptions apply — it is that they have not even alleged the existence of a transaction. The plaintiffs' prohibited transaction claims under § 1106(b)(1) and (a)(1) (Counts III and IV) are therefore **dismissed.**

### C.

The plaintiffs finally allege that WPP violated its duty to monitor the Plan Committee to ensure that the latter was satisfying its fiduciary duties under ERISA. While the text of ERISA does not explicitly impose on plan fiduciaries a duty to monitor, several courts have held that there is a duty to monitor appointed fiduciaries under ERISA. See Bloom v. AllianceBernstein L.P., 725 F. Supp. 3d 325, 343 (S.D.N.Y. 2024). However, the "[p]laintiffs cannot maintain a claim for breach of the duty to monitor" against WPP "absent an underlying breach of the duties imposed under ERISA" by the Plan Committee. Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 68 (2d Cir. 2016). Because the plaintiffs failed to state breach-of-fiduciary-duty or prohibited-transaction claims, their derivative monitoring claim (Count V) is also **dismissed.**

IV.

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted.** Counts I (breach of duty of loyalty), III (prohibited transaction between plan and fiduciary), and IV (prohibited transaction between plan and party in interest) are **dismissed with prejudice.** Counts II (breach of duty of prudence) and V (breach of duty to monitor) are **dismissed without prejudice.** Any amended complaint must be filed within twenty-one days. If no amended complaint is filed, the dismissal of all claims will be with prejudice.

The Clerk is directed to close ECF No. 29.

**SO ORDERED.**

Dated:    New York, New York
          October 24, 2025

_____
            John G. Koeltl
     **United States District Judge**

31