UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

RAFAEL POLANCO, ET AL.,

                    Plaintiffs,

        - against -

WPP GROUP USA, INC., ET AL.,

                    Defendants.

———————————————————————————

24-cv-9548 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiffs, Rafael Polanco and Monique Johnson, are former participants in a retirement plan sponsored by WPP Group, USA, Inc. ("WPP") and administered by the Administrative and Investment Committee of the Savings and Investment Plan (the "Plan Committee"). In their original complaint, the plaintiffs alleged that WPP and the Plan Committee (together, the "defendants") breached their fiduciary duties and engaged in prohibited self-dealing in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001 et seq.), by using plan forfeitures to reduce future employer contributions rather than to defray the plan's administrative costs. See ECF No. 8. In a Memorandum Opinion and Order dated October 27, 2025, this Court granted the defendants' motion to dismiss the plaintiffs' complaint for failure to state a claim. See Polanco

v. WPP Grp. USA, Inc. (Polanco I), No. 24-cv-9548, 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025).

The plaintiffs filed an amended complaint re-alleging that the Plan Committee violated its duty of prudence and that WPP violated its corresponding duty to monitor. See generally First Am. Compl. ("FAC"), ECF No. 52. The defendants now move to dismiss the FAC in its entirety.

For the following reasons, the defendants' motion to dismiss is **granted.**

**I.**

Unless otherwise noted, the following allegations are taken from the plaintiffs' pleadings.

**A.**

WPP is a Delaware corporation with its principal place of business in New York. FAC ¶ 16. WPP sponsors a defined contribution plan (the "Plan"), which helps eligible employees, including the plaintiffs when they were employed by WPP, to save for retirement. Id. ¶ 9. "A defined contribution plan is one where employees and employers may contribute to the plan," "the employer's contribution is fixed," and "the employee receives whatever level of benefits the amount contributed on his behalf

will provide."[1] <u>Hughes Aircraft Co.</u> v. <u>Jacobson</u>, 525 U.S. 432, 439 (1999).

The Plan allows employees to withhold a portion of their wages, which are deposited into their individual retirement accounts. FAC ¶ 42. In addition to these individual contributions, WPP may, in its discretion, provide employees with a matching employer contribution. <u>See</u> <u>id.</u> ¶¶ 91-95 (discussing WPP's discretionary employer contributions). Both funding streams flow first into the Plan's trust fund and then are allocated to individual participant accounts. <u>Id.</u> ¶ 47.

Employee contributions vest immediately. <u>Id.</u> ¶ 50. By contrast, WPP's contributions are subject to a three-year vesting schedule. <u>Id.</u> If a Plan participant experiences a break in service before WPP's contributions vest, that participant forfeits the balance of the unvested employer contributions, along with any actual earnings on those contributions. <u>Id.</u> ¶ 51.

When a Plan participant forfeits his or her employer contributions, the defendants may use those funds either to cover future employer contributions or to pay the Plan's administrative costs. <u>Id.</u> ¶ 53. Since at least 2019, the defendants have used forfeited assets ("Forfeitures") primarily to cover em-

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

ployer contributions rather than administrative expenses. Id. ¶ 66. The Plan's administrative costs have been paid by the Plan or by Plan participants. Id.

**B.**

The plaintiffs initiated this action on December 13, 2024. ECF No. 1. Following oral argument on October 20, 2025, this Court granted the defendants' motion to dismiss. See generally Polanco I, 2025 WL 3003060. Specifically, the Court dismissed with prejudice the plaintiffs' claims that the defendants breached their duty of loyalty and engaged in prohibited self-dealing. Id. at *11. The Court dismissed without prejudice the plaintiffs' claims that the defendants violated their duty of prudence and duty to monitor. Id.

On November 18, 2025, the plaintiffs amended their complaint, this time focusing on the remaining prudence and monitoring claims. The defendants now move to dismiss the FAC for failure to state a claim.

**II.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiffs' favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiffs, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

For the purposes of a 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "[A] document not expressly incorporated by reference in the complaint" that "is nevertheless integral to the complaint" is "a fair object of consideration on a motion to dismiss." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." Id. "In most instances" in which the incorporation-by-reference "exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." Id. Courts thus routinely consider employee benefit plan documents to be incorporated by reference

into complaints implicating ERISA. See, e.g., Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins., No. 22-cv-10312, 2023 WL 2478642, at *2 (S.D.N.Y. Mar. 13, 2023) ("Clearly, the complaint relies heavily upon the Plan's terms and effect, which renders the document integral to the complaint"), aff'd, 2024 WL 2813721 (2d Cir. 2024); see also Hutchins v. HP Inc. (Hutchins II), 767 F. Supp. 3d 912, 920 (N.D. Cal. 2025) (considering "the HP Inc. 401(k) Plan" to be "incorporated by reference into" the plaintiff's complaint because "it forms the basis of [the] [p]laintiff's claims and no party contests its authenticity").

## III.

The plaintiffs bring two claims in the FAC. First, the plaintiffs allege that the Plan Committee breached its fiduciary duty of prudence under ERISA by failing to use Forfeitures to cover administrative costs and by failing to allocate all Forfeitures by the end of each Plan year. Second, the plaintiffs allege that WPP breached its duty to monitor the Plan Committee by allowing the Plan Committee to breach its duty of prudence.

## A.

ERISA requires that plan fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enter-

6

prise of a like character and with like aims" to carry out their obligations. 29 U.S.C. § 1104(a)(1)(B). "Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014). A "categorical rule is" therefore "inconsistent with the context-specific inquiry that ERISA requires." Hughes v. Nw. Univ., 595 U.S. 170, 173 (2022).

In their original complaint, the plaintiffs alleged that "[i]n deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process," and there were "no facts or circumstances throughout the class period that make discretionary decisions to use forfeitures to reduce WPP contributions consistent with discharging their duties with respect to the Plan solely in the interest of the participants and beneficiaries." Compl. ¶¶ 71, 91, ECF No. 8. The Court concluded that these allegations were inadequate to support a lack-of-prudence claim. "To the extent the plaintiffs mean[t] to argue that the duty of prudence always requires a fiduciary to use forfeitures to pay administrative costs before using them to cover discretionary employer contributions, their theory [wa]s in tension with the Supreme Court's analysis in Dudenhoeffer, which emphasizes that the plausibility of allegations of breach of fiduciary duty should consider the context and circumstances

of the fiduciary's actions." Polanco I, 2025 WL 3003060, at *8. And "[t]o the extent the plaintiffs mean[t] instead to make the narrower claim that the defendants' particular decisionmaking process in this case was imprudent, their allegations [we]re too conclusory to establish a plausible entitlement to relief." Id. The plaintiffs were instead required to allege specific facts "that invite the inference that the fiduciary actually engaged in imprudent conduct." Id. (quoting Hutchins II, 767 F. Supp. 3d at 927).

The plaintiffs attempt to bolster their prudence claim in the FAC with two new sets of allegations. Neither, however, addresses the concerns identified in Polanco I.

First, the plaintiffs contend that there is "no indication" that using Forfeitures was necessary to maintain current employer-contribution levels or to cover future employer-contributions. FAC ¶ 91. Nor was there any indication that "WPP's process in determining the amount of its Company Contributions is based on any consideration of the amount of Forfeited Plan Assets." Id. But this argument, fundamentally, is no different from the one that this Court rejected in Polanco I: it assumes from the defendants' permissible choice to use Forfeitures to cover future employer contributions that the Plan Committee lacked a prudent process for determining how to allocate Forfeitures. As the Court explained in Polanco I,

8

allegations of this kind, without more, cannot support a claim that the Plan Committee violated its duty of prudence under ERISA. See Polanco I, 2025 WL 3003060, at *8–9. There must be specific facts alleged that invite the inference that the fiduciary actually engaged in imprudent conduct. And the simple assertion that the employer did not need to use the Forfeitures for discretionary employer contributions does not suggest that it was imprudent to do so.

The plaintiffs insist that they are not required to plead direct evidence of imprudence and note that "a claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." Sacerdote v. N.Y. Univ., 9 F.4th 95, 106–07 (2d Cir. 2021). But allegations that the Plan Committee must have lacked a prudent process because it did not use Forfeitures in the way that the plaintiffs would have liked are not "sufficient circumstantial allegations." Id. "[P]lausibly alleging a failure to fulfill the duty of prudence still requires more than simply speculating that an ERISA fiduciary might not have conducted the requisite inquiry." Hutchins II, 767 F. Supp. 3d at 927.

Second, the plaintiffs allege that the Plan Committee violated its duty of prudence by failing to "ensure[] that all [Forfeitures] for the plan year were promptly exhausted by year

9

end or shortly thereafter, and did not remain in an unallocated Plan account." FAC ¶ 105. The plaintiffs base these allegations on the Plan's Form 5500 filings during the putative class period, which showed several millions of dollars in the Plan's Forfeitures account at the end of each year between 2019 and 2023. Id. ¶ 66.[2]

This argument is insufficient, however, because the plaintiffs never explain why it would be imprudent for the Plan Committee not to allocate all Forfeitures at the end of the Plan year. As the plaintiffs acknowledge, the Form 5500 filings only show Plan assets as of December 31 on any given year. Id. ¶ 64 (noting that "as of December 31 of each year from 2019 through 2023, unallocated Forfeited Plan Assets remained unused"); see also Defs.' Mot. to Dismiss FAC 5, ECF No. 56 ("[T]he Plan's Form 5500s merely provide a single snapshot in time of the amount contained in the Plan's Forfeiture account as of December 31 of each plan year."). The plaintiffs also acknowledge that "Company Contributions ... are made annually ... around six months after the end of the prior plan year." FAC ¶ 97. And because Forfeitures accrue whenever a Plan

---

[2] The defendants' Form 5500 filings are incorporated by reference into the plaintiffs' FAC because "the complaint relies heavily upon [their] terms and effect." Goel, 820 F.3d at 559; see, e.g., FAC 10 n.5 ("Unless otherwise specified, the facts specific to the Plan in this section are taken from ... the Plan's Form 5500s filed by Defendants with the Department of Labor ....").

participant experiences a break in service before the employer contributions in the participant's account vest, the time at which Forfeitures accrue in the Plan's Forfeitures account is variable.

It is therefore not only reasonable but entirely expected that the Plan's Forfeitures account would contain potentially large sums of money on December 31 of each year. That sum would reflect the amount of Forfeitures that had accumulated after the last distribution of employer contributions but before the next distribution. Unless the defendants allocated Forfeitures to cover employer contributions on December 31 of each year — an allegation the plaintiffs expressly disclaim — then it is difficult to imagine a situation in which the Form 5500 filings would show a balance even close to zero at year end.

Other district courts confronted with this issue have similarly rejected the contention "that [the] mere existence of a forfeiture balance at year's end necessarily implies an unreasonable delay." Donelson v. Meijer, Inc., No. 25-cv-1156, 2025 WL 3754241, at *5 (W.D. Mich. Dec. 29, 2025); see also Tillery v. WakeMed Health & Hosps., No. 25-cv-408, 2026 WL 125784, at *7 (E.D.N.C. Jan. 15, 2026) ("At bottom, merely alleging that forfeiture balances existed does not give rise to an inference that defendants breached the duty of prudence.").

The plaintiffs point to several cases that found similar allegations based on Form 5500 filings sufficient to state a prudence claim under ERISA. For example, the plaintiffs cite Rudasill v. Swiss Re Am. Holding Corp., No. 25-cv-1403, 2026 WL 861676, at *7 (S.D.N.Y. Mar. 30, 2026), and Buescher v. N. Am. Lighting, Inc., 791 F. Supp. 3d 873, 893-94 (C.D. Ill. June 30, 2025). But these cases treat year-end balances in cursory fashion and never explain why failing to allocate all forfeitures by December 31 is imprudent.

Because the plaintiffs again fail to state a plausible claim that the Plan Committee breached its duty of prudence, their prudence claim is **dismissed with prejudice.**

### B.

The plaintiffs also allege that WPP violated its own fiduciary duties by failing to monitor the Plan Committee to ensure that the latter was satisfying its duty of prudence under ERISA. However, the plaintiffs "cannot maintain a claim for breach of the duty to monitor" against WPP "absent an underlying breach of the duties imposed under ERISA" by the Plan Committee. Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 68 (2d Cir. 2016). Because the plaintiffs failed to state a breach-of-fiduciary-duty claim against the Plan Committee, their derivative monitoring claim is also **dismissed with prejudice.**

12

**IV.**

The Court has considered all arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss the FAC in its entirety is **granted**. Count I (breach of the duty of prudence regarding allocation of forfeited Plan assets) and Count II (breach of the duty to monitor) are **dismissed with prejudice**.

The Clerk is directed to close ECF No. 56, to enter judgment dismissing this case, and to close this case.

SO ORDERED.
Dated:   New York, New York
         April 22, 2026

_____
             John G. Koeltl
        United States District Judge

13